Case 4:19-cv-03932 Document 1-1 Filed on 10/11/19 in TXSD Page 1 of 30

**201962504 - MILLER, CHRISTOPHER vs. METROPOLITAN LLOYDS INSURANCE COMPANY OF TEXAS (Court 129)**

Chronological History | Print All
*(non-financial)*

| Summary | Appeals | Cost Statements | Transfers | Post Trial Writs | Abstracts | Parties |
|---------|---------|-----------------|-----------|------------------|-----------|---------|
| Court Costs | Judgments/Events | Settings | Services/Notices | Court Registry | Child Support | Images |

Click column headings to sort. Click again to toggle direction.

Print Events

| Date | Description | Order Signed Date | Post Jdgm | Pages | Volume/Page | Filing Attorney | Person Filing |
|------|-------------|-------------------|-----------|-------|-------------|-----------------|---------------|
| 10/3/2019 | ANSWER ORIGINAL PETITION | | | | | INGRAM, THOMAS GLENN | METROPOLITAN LLOYDS INSURANCE COMPANY OF TEXAS |
| 9/3/2019 | JURY FEE PAID (TRCP 216) | | | | | | |
| 9/3/2019 | ORIGINAL PETITION | | | | | CORONA, JESSE S | MILLER, CARRIE |
| 9/3/2019 | ORIGINAL PETITION | | | | | CORONA, JESSE S | MILLER, CHRISTOPHER |

[WS5]

EXHIBIT A

9/2/2019 9:22 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 36457244
By: Nelson Cuero
Filed: 9/3/2019 12:00 AM

CAUSE NO. **2019-62504**

| | | |
|---|---|---|
| **CHRISTOPHER MILLER,** | § | **IN THE DISTRICT COURT** |
| **CARRIE MILLER,** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| **vs.** | § | **OF HARRIS COUNTY, TEXAS** |
| | § | |
| **METROPOLITAN LLOYDS** | § | |
| **INSURANCE COMPANY OF TEXAS,** | § | |
| | § | |
| *Defendant.* | § | **129th JUDICIAL DISTRICT** |

## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Plaintiffs CHRISTOPHER MILLER and CARRIE MILLER (the "MILLERS"), and complains of Defendant METROPOLITAN LLOYDS INSURANCE COMPANY OF TEXAS ("METROPOLITAN"). In support of such claims and causes of action, Plaintiffs respectfully show unto this Honorable Court and Jury as follows:

### I. DISCOVERY CONTROL PLAN

1.1     Discovery in this case should be conducted in accordance with a Level 2 tailored discovery control plan pursuant to Texas Rule of Civil Procedure 190.4.

### II. PARTIES

2.1     Plaintiffs, CHRISTOPHER MILLER and CARRIE MILLER, are residents of Harris County, Texas.

2.2     Defendant, METROPOLITAN LLOYDS INSURANCE COMPANY OF TEXAS, is a domestic company engaged in the business of insurance in this state. It may be served with process by serving its registered agent, CT Corporation System, by certified mail, return receipt requested, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136, or wherever it may be found. Plaintiffs request citation be issued and E-served to Plaintiffs' attorney's office

---

at this time.

## III. JURISDICTION AND VENUE

3.1     This Court has jurisdiction over this case in that the amount in controversy exceeds the minimum jurisdictional limits of this Court.

3.2     Venue is proper in Harris County, Texas, because all or a substantial part of the events giving rise to the lawsuit occurred in this county, and the insured property that is the basis of this lawsuit is located in Harris County, Texas.

## IV. AGENCY AND RESPONDEAT SUPERIOR

4.1     Whenever in this Petition it is alleged that Defendant did any act or thing, it is meant that Defendant or its agents, officers, servants, employees, or representatives did such a thing.  It was also done with the full authorization or ratification of Defendant or done in the normal routine, course and scope of the agency or employment of Defendant or its agents, officers, servants, employees, or representatives.

## V. CONDITIONS PRECEDENT

5.1     All conditions precedent to recovery have been performed, waived, or have occurred.

## VI. FACTS APPLICABLE TO ALL COUNTS

6.1     The MILLERS are the owners of a Texas Homeowner's Policy number 7500143780 issued by METROPOLITAN (the "Policy").

6.2     The MILLERS own the insured property, which is specifically located at 19815 Elm Fork Drive, Humble, TX 77346 (the "Property").

6.3     METROPOLITAN, or its agent(s), sold the Policy, insuring and covering the Property against damages from storm-related events, to Plaintiffs.

6.4     On or about May 26, 2018 (incorrectly assigned by Defendant as June 3, 2018)

---

PLAINTIFFS' ORIGINAL PETITION

and January 22, 2019, the MILLERS experienced storms that damaged the Property. In its track, the storms left behind widespread damage to the Property, Plaintiffs' home.

6.5    The    MILLERS    timely    submitted    a    claim    to    METROPOLITAN. METROPOLITAN assigned various adjusters to adjust the claim. However, METROPOLITAN and its agents were not diligent in investigating Plaintiffs' loss. METROPOLITAN failed to timely and accurately investigate the covered loss. METROPOLITAN assigned claim number JDH91327 and JDI14539 to the MILLERS' claims.

6.6    Ultimately, METROPOLITAN, inspected the MILLERS' property after the storms.    During the inspection, METROPOLITAN, was tasked with the responsibility of conducting a thorough and reasonable investigation of the MILLERS' claims, including determining the cause of, and then quantifying the damage done to the MILLERS' home.

6.7    METROPOLITAN prepared a repair estimate which did not account for all of the covered damages. Further, even the damages that were accounted for were vastly under-scoped. Thus, Defendant METROPOLITAN demonstrated it did not conduct a thorough investigation of the claim.

6.8    Defendant METROPOLITAN failed to fairly evaluate and adjust the MILLERS' claim as they are obligated to do under the Policy and Texas law. By failing to properly investigate the claim and wrongfully denying full coverage to the MILLERS, METROPOLITAN engaged in unfair settlement practices by misrepresenting material facts to the MILLERS.

6.9    Defendant METROPOLITAN failed to perform its contractual duty to adequately compensate the MILLERS under the terms of the Policy.    Specifically, Defendant METROPOLITAN failed and refused to properly pay proceeds for the Policy, although due demand was made for proceeds to be paid in an amount sufficient to cover the damaged property, and all conditions precedent to recovery upon the Policy had been carried out and

accomplished by the MILLERS. Defendant METROPOLITAN's conduct constitutes a material breach of the insurance contract.

6.10    Defendant METROPOLITAN misrepresented to the MILLERS that the damage to the Property was not covered under the Policy, even though the damage was caused by a covered peril. Defendant's conduct constitutes a violation of the Unfair Settlement Practices specified in Tex. Ins. Code § 541.060(a)(1).

6.11    Defendant METROPOLITAN's repair estimate under-scoped the covered damages and misrepresented the benefits under the Policy, which promised to pay the amount of loss to the MILLERS. Defendant's conduct constitutes a violation of the Misrepresentation Regarding Policy or Insurer section specified in Tex. Ins. Code § 541.051(1)(B).

6.12    Defendant METROPOLITAN failed to make an attempt to settle the MILLERS' claims in a prompt and fair manner, although they were aware of its liability to the MILLERS was reasonably clear under the Policy. Defendant's conduct constitutes a violation of the Unfair Settlement Practices specified in Tex. Ins. Code § 541.060(a)(2)(A).

6.13    Defendant METROPOLITAN failed to explain to the MILLERS why full payment was not being made. Furthermore, Defendant did not communicate that future payments would be forthcoming to pay for the entire losses covered under the Policy, nor did Defendant provide any explanation for the failure to adequately settle the MILLERS' claims, in violation of Tex. Ins. Code § 541.060(a)(3).

6.14    Defendant METROPOLITAN failed to affirm or deny coverage of the MILLERS' claim within a reasonable time. Specifically, the MILLERS did not receive timely indication of acceptance or rejection, regarding the full and entire claim, in writing from Defendants. Defendant's conduct constitutes a violation of the Unfair Settlement Practices specified in Tex. Ins. Code § 541.060(a)(4).

6.15 Defendant METROPOLITAN refused to fully compensate the MILLERS under the terms of the Policy, even though Defendant failed to conduct a reasonable investigation. Specifically, Defendant METROPOLITAN performed a results/outcome-oriented investigation of Plaintiffs' claim, which resulted in a biased, unfair and inequitable evaluation of the MILLERS' losses to the Property. Defendant's conduct constitutes a violation of the Unfair Settlement Practices specified in Tex. Ins. Code § 541.060(a)(7).

6.16 Defendant METROPOLITAN misrepresented the insurance policy sold to the MILLERS by (1) making an untrue statement of material fact regarding coverage; (2) failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made; (3) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact regarding coverage; (4) making a material misstatement of law; and/or (5) failing to disclose a matter required by law to be disclosed, including failing to make a disclosure in accordance with another provision of the Texas Insurance Code, in violation of Section 541.061 of the same.

6.17 Defendant METROPOLITAN failed to meet its obligation under the Texas Insurance Code regarding timely acknowledging Plaintiffs' claim, beginning an investigation of the MILLERS' claim, and requesting all information reasonably necessary to investigate the MILLERS' claim within the statutorily mandated deadline. Defendant's conduct constitutes a violation of the Prompt Payment of Claims subchapter specified in Tex. Ins. Code § 542.055.

6.18 Defendant METROPOLITAN failed to accept or deny the MILLERS' full and entire claim within the statutory mandated deadline of receiving all necessary information. Defendant's conduct constitutes a violation of the Prompt Payment of Claims subchapter specified in Tex. Ins. Code § 542.056.

6.19 Defendant METROPOLITAN failed to meet its obligations under the Texas

Insurance Code regarding payment of claims without delay. Specifically, Defendant has delayed full payment of Plaintiffs' claim longer than allowed and, to date, the MILLERS have not yet received full payment for their claim. Defendant's conduct constitutes a violation of the Prompt Payment of Claims subchapter specified in Tex. Ins. Code § 542.058.

6.20    From the point in time the MILLERS' claims were presented to Defendant METROPOLITAN, the liability of Defendant to pay the full claim in accordance with the terms of the Policy was reasonably clear. However, Defendant METROPOLITAN has refused to pay the MILLERS in full, despite there being no basis whatsoever on which a reasonable insurance company would have relied to deny the full payment. Defendant's conduct constitutes a breach of the common law duty of good faith and fair dealing.

6.21    As a result of Defendant's wrongful acts and omissions, the MILLERS were forced to retain the professional services of the attorney and law firm who are representing the MILLERS with respect to these causes of action. On or about April 16, 2019, the MILLERS' counsel sent a letter of representation requesting various documents related to the storms, including a certified true copy of the complete policy covering the property on the date of loss, with all endorsements.

6.22    On or about May 24, 2019, the MILLERS' counsel sent a Texas Insurance Code 542A Notice and Texas Deceptive Trade Practices Act ("DTPA") Demand letter to the Defendant. The letter gave Defendant a statement of the acts or omissions giving rise to the claims and included the specific amount alleged to be owed by the insurer on the claims for damage to or loss of a covered property, as well as the amount of reasonable and necessary attorney's fees incurred by Plaintiffs as of the date of the Notice. The letter also informed Defendant of potential violations under the DTPA and Insurance Code related to its handling and adjusting of Plaintiffs' claims and potential claims, including attorney's fees, statutory penalty

interest, and additional damages arising from those violations. The Notice and Demand letter provided Defendant with the statutorily mandated sixty days to respond, and an opportunity to resolve the claims without extended litigation costs. The letter was submitted with a line-itemed Xactimate damage estimate with color photos, detailing the exact damages at the Property and the costs to repair it. Defendant acknowledged the letter and asked for a re-inspection of the Property in a letter to the MILLERS' counsel dated July 3, 2019. That re-inspection took place July 31, 2019 without a change in claims position by Defendant. The sixty-one day statutory notice requirement has been satisfied, as well as the statutory requirement that Defendants either deny a DTPA and Insurance Code Demand or be allotted a sixty-day time period to attempt to resolve the claim before a Petition is to be filed.

6.23   To date, Defendant METROPOLITAN has failed to and refused to pay the MILLERS for the proper repair of the property. The MILLERS' experience is not an isolated case. The acts and omissions of Defendants committed in this case, or similar acts and omissions, occur with such frequency that they constitute a general business practice of Defendants with regard to handling these types of claims. Defendants' entire process is unfairly designed to reach favorable outcomes for the company at the expense of the policyholder.

## VII. COUNTS

7.1   Plaintiffs incorporate by reference all facts, statements, and allegations set forth in all previous paragraphs, as if set forth in full in each cause of action that follows.

### 7.2   COUNT 1 – BREACH OF CONTRACT

a.   At the time of the loss, Plaintiffs had valid, enforceable insurance contract in place, issued by Defendant (the "Policy"). Plaintiffs were the insureds of the contract. Plaintiffs fully performed their contractual obligations by making premium payments as required by the insurance contract, and at all times complied fully with all material

---

provisions of the Policy.

   b.      According to the Policy that Plaintiffs purchased, Defendant METROPOLITAN had the duty to investigate and pay Plaintiffs' policy benefits for claims made for covered damages, including additional benefits under the Policy, resulting from the damages. As a result of these damages, which result from covered perils under the Policy, the Plaintiffs' home has been damaged.

   c.      Defendant METROPOLITAN's failure to properly investigate and refusal, as described above, to pay the adequate compensation as it is obligated to do under the terms of the Policy in question and under the laws of the State of Texas, constitutes a material breach of Defendant METROPOLITAN's contract with Plaintiffs. As a result of this breach of contract, Plaintiffs have suffered the damages that are described in this Petition, the producing cause of which is Defendant's actions.

7.3    **COUNT 2 – PROMPT PAYMENT OF CLAIMS; VIOLATION OF TEXAS INSURANCE CODE §542, ET SEQ.**

   a.      Under the Texas Insurance Code, Defendant METROPOLITAN had a duty to investigate and pay Plaintiffs' claims under the Policy in a timely manner. Defendant METROPOLITAN violated Chapter 542 of the Texas Insurance Code by not timely: (1) commencing its investigation of the claims; (2) requesting information needed to investigate the claims; (3) communicating with its insured regarding the status of its investigation, including failing to accept or reject Plaintiffs' claims in writing within the statutory timeframe; (4) conducting its investigation of the claims; and (5) paying the claims.

   b.      All of the above-described acts, omissions, and failures of Defendant are a producing cause of Plaintiffs' damages that are described in this Petition. Defendant METROPOLITAN is therefore liable under Chapter 542 for penalty interest at the rate

set forth in the statute, and attorney's fees taxed as costs of this suit.

     c.     Additionally, if it is determined Defendant METROPOLITAN owes Plaintiffs any additional money on Plaintiffs' claims, then Defendant has automatically violated Chapter 542 in this case.

## 7.4    COUNT 3 –   UNFAIR INSURANCE PRACTICES; VIOLATION OF TEXAS INSURANCE CODE § 541, ET SEQ.

     a.     As an insurer, Defendant METROPOLITAN owes statutory duties to Plaintiffs as its insured.  Specifically, the Texas Insurance Code prohibits Defendant METROPOLITAN from engaging in any unfair or deceptive act or practice in the business of insurance.

     b.     By its acts, omissions, failures, and conduct, Defendant METROPOLITAN has engaged in unfair and deceptive acts or practices in the business of insurance in violation of 541 of the Texas Insurance Code.  Such violations include, without limitation, all the conduct described in this Petition, plus Defendant's unreasonable delays and under-scoping in the investigation, adjustment, and resolution of the Plaintiffs' claims, plus Defendant's failure to pay for the proper repair of the Plaintiffs' home on which liability had become reasonably clear.  They further include Defendant's failure to give Plaintiffs the benefit of the doubt.  Specifically, Defendant METROPOLITAN are guilty of the following unfair insurance practices:

     i.     Misrepresenting to Plaintiffs pertinent facts or policy provisions relating to the coverage at issue;

     ii.     Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of claims submitted in which liability had become reasonably clear;

     iii.     Failing to provide promptly to a policyholder a reasonable

explanation of the basis in the insurance policy in relation to the facts or applicable law for the denial of a claim or for the offer of a company's settlement;

iv.     Failing to affirm or deny coverage of Plaintiffs' claims within a reasonable time;

v.     Refusing to pay Plaintiffs' claims without conducting a reasonable investigation with respect to the claims; and

vi.     Misrepresenting the insurance policy sold to Plaintiffs by (1) making an untrue statement of material fact regarding coverage; (2) failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made; (3) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact regarding coverage; (4) making a material misstatement of law; and/or (5) failing to disclose a matter required by law to be disclosed, including failing to make a disclosure in accordance with another provision of the Texas Insurance Code.

c.     Defendant METROPOLITAN has also breached the Texas Insurance Code when it breached its duty of good faith and fair dealing. Defendant's conduct as described herein has resulted in Plaintiffs' damages that are described in this Petition.

d.     All of the above-described acts, omissions, and failures of Defendant are a producing cause of Plaintiffs' damages that are described in this Petition, and were done knowingly and/or intentionally as that term is used in the Texas Insurance Code.

7.5     **COUNT 4 – DTPA; VIOLATIONS OF TEXAS BUSINESS AND COMMERCE CODE § 17.46, ET SEQ.**

a.     Plaintiffs are individuals who sought and acquired a good, the Policy that is the subject of the suit, by purchase, from the Defendant. They also sought and

acquired the service and adjustment of claims under that policy, a service that was "furnished in connection with the sale or repair of goods", as defined by the DTPA. This qualifies Plaintiffs as consumers of goods and services provided by Defendant as defined by the Texas Deceptive Trade Practices Act ("DTPA"), codified under Chapter 17 of the Texas Business and Commerce Code. The Plaintiffs have met all conditions precedent to bringing this cause of action against Defendants. Specifically, Defendant's violations of the DTPA include without limitation, the following matters.

b.    By its acts, omissions, failures, and conduct that are described in this Petition, Defendant METROPOLITAN has committed false, misleading, or deceptive acts or practices in violation of § 17.46(b)(2), (3), (5), (7), (11), (12), (13), (20), and (24) of the DTPA. In this respect, Defendant's violations include without limitation:

i.    Unreasonable delays in the investigation, adjustment and resolution of Plaintiffs' claims, during which Defendant employed a series of alleged "independent adjusters" under the control of Defendant, that caused confusion to Plaintiffs as to whom was representing whom, and had whose best interests in mind. This gives Plaintiffs the right to recover under Section 17.46(b)(2) and (3) of the DTPA;

ii.    As described in this Petition, Defendant represented to Plaintiffs that the insurance policy and Defendant's adjusting and investigative services had characteristics, uses, or benefits that it did not have, which gives Plaintiffs the right to recover under Section 17.46(b)(5) of the DTPA;

iii.    As described in this Petition, Defendant represented to Plaintiffs that the insurance policy and Defendant's adjusting and investigative services were of a particular standard, quality, or grade when they were of another in

violation of Section 17.46(b)(7) of the DTPA;

iv.    As described in this Petition, Defendant represented to Plaintiffs that the insurance policy and Defendant's adjusting and investigative services conferred or involved rights, remedies, or obligations that it did not have, which gives Plaintiffs the right to recover under Section 17.46(b)(12) of the DTPA;

v.    Defendant knowingly made false or misleading statements of fact concerning the need for replacement of roofing systems, which gives Plaintiffs the right to recover under Section 17.46(b)(13) of the DTPA;

vi.    Defendant breached an express and / or implied warranty that the damage caused by the subject storms would be covered under the insurance policies.  This entitles the Plaintiffs to recover under Sections 17.46(b)(12) and (20) and 17.50(a)(2) of the DTPA;

vii.    Defendant failed to disclose information concerning the insurance policy which was known at the time of the transaction where the failure to disclose such information was intended to induce the Plaintiffs into a transaction into which the Plaintiffs would not have entered had the information been disclosed.  This gives Plaintiffs the right to recover under Section 17.46(b)(24) of the DTPA;

viii.    Defendant's    actions,    as    described    in    this    Petition,    are unconscionable in that it took advantage of Plaintiffs' lack of knowledge, ability, and experience to a grossly unfair degree.  Defendant's unconscionable conduct gives Plaintiffs the right to relief under Section 17.50(a)(3) of the DTPA; and

ix.    Defendant's conduct, acts, omissions, and failures as described in this Petition, are unfair practices in the business of insurance in violation of

Section 17.50(a)(4) of the DTPA, under which violations of Chapter 541 of the Texas Insurance Code are an enabling statute.

c.     All of the above-described acts, omissions, and failures of Defendant are a producing cause of Plaintiffs' damages that are described in this Petition. All of the above-described acts, omissions, and failures of Defendant were done knowingly and intentionally, as those terms are used and defined in the Texas Deceptive Trade Practices Act.

### 7.6     COUNT 5 – BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

a.     By its acts, omissions, failures, and conduct, Defendant has breached its common law duty of good faith and fair dealing by failing to pay the proper amounts on Plaintiffs' entire claims without any reasonable basis, and by failing to conduct a reasonable investigation to determine whether there was a reasonable basis for this denial. Defendant has also breached this duty by unreasonably delaying payment of Plaintiffs' entire claims, and by failing to settle Plaintiffs' entire claims because Defendant knew or should have known that it was reasonably clear that the claims were covered. These acts, omissions, failures, and conduct of Defendant are a proximate cause of Plaintiffs' damages.

### 7.7     COUNT 6 – MISREPRESENTATION

a.     Defendant METROPOLITAN is liable to Plaintiffs under the theories of intentional misrepresentation, or in the alternative, negligent misrepresentation. Defendant METROPOLITAN did not inform Plaintiffs of certain exclusions in the policy. Misrepresentations were made by Defendant METROPOLITAN or its agents, with the intention that they should be relied upon and acted upon by Plaintiffs, who relied on the misrepresentations to their detriment. As a result, Plaintiffs have suffered

damages, including but not limited to loss of the Property, loss of use of the Property, mental anguish and attorney's fees.  Defendant METROPOLITAN is liable for these actual consequential and penalty-based damages.

## VIII.  WAIVER AND ESTOPPEL

8.1     Defendant is waived and is estopped from asserting any coverage defenses, conditions, exclusions, or exceptions to coverage not contained in any reservation of rights letter to the Plaintiffs.

## IX.  DAMAGES / CLAIMS FOR RELIEF

9.1     All the damages described and sought in this Petition are within the jurisdictional limits of the Court.  In accordance with Texas Rule of Civil Procedure 47(c), Plaintiff hereby notifies the Court she is seeking only monetary relief of $100,000 or less, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees.

9.2     The above described acts, omissions, failures, and conduct of Defendants caused Plaintiffs' damages, which include, without limitation, (1) the cost to properly repair Plaintiffs' home, (2) any investigative and engineering fees incurred by Plaintiffs, (3) court costs, and (4) attorney's fees.  The Plaintiffs are entitled to recover consequential damages from Defendants' breach of contract.  The Plaintiffs are also entitled to recover the amount of Plaintiffs' claims plus interest on the amount of the claims, under Chapter 542 of the Texas Insurance Code, as damages each year at the rate determined on the date of judgment by adding five percent to the interest rate determined under Section 304.003 of the Texas Finance Code, accruing beginning on the date the claims were required to be paid.  This interest is in addition to prejudgment interest.

9.3     Defendant has also "knowingly" and "intentionally" committed deceptive trade practices and unfair insurance practices as those terms are defined in the applicable statutes.

Because of Defendant's knowing and intentional misconduct, Plaintiffs are entitled to additional damages as authorized by Section 17.50(b)(1) of the DTPA, which allows recovery of up to three times economic damages. Where there is an enabling statute for the DTPA, as there is here with the Texas Insurance Code, Plaintiffs are entitled to recovery of up to three times actual damages. Plaintiffs are further entitled to the additional damages that are authorized by Chapter 541 of the Texas Insurance Code.

9.4     Defendant's breach of its duty of good faith and fair dealing owed to Plaintiffs was done intentionally, with a conscious indifference to the rights and welfare of Plaintiffs, as defined in Chapter 41 of the Texas Civil Practice and Remedies Code. These violations by Defendant are the type of conduct which the State of Texas protects its citizens against by the imposition of exemplary damages. Therefore, Plaintiffs seek the recovery of exemplary damages in the amount to be determined by the finder of fact that is sufficient to punish Defendant for its wrongful conduct and to set an example to deter Defendant and others similarly situated from committing similar acts in the future.

## X. ATTORNEY'S FEES

10.1    As a result of Defendant's conduct that is described in this Petition, Plaintiffs have been forced to retain the undersigned law firm and attorney to prosecute this action, and has agreed to pay reasonable attorney's fees. Plaintiffs are entitled to recover these attorney's fees under Chapter 38 of the Texas Civil Practice and Remedies Code, Chapters 541 and 542 of the Texas Insurance Code, and Section 17.50 of the DTPA.

## XI. DISCOVERY

11.1    Under Texas Rule of Civil Procedure 194, the Defendant is requested to disclose within fifty (50) days of service of this request, the information of material described in Texas Rule of Civil Procedure 194.2(a) through (l). Plaintiffs' Requests for Disclosure, Requests for

Production, Interrogatories, and Requests for Admissions are attached, for service at the time of service of this Petition, and incorporated herein by reference.

## XII. JURY DEMAND

12.1    Plaintiffs demand a jury trial and tenders the appropriate fee with this Petition.

## XIII. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs CHRISTOPHER MILLER and CARRIE MILLER pray that Defendant METROPOLITAN LLOYDS INSURANCE COMPANY OF TEXAS be cited to appear and answer herein, and that upon trial hereof, said Plaintiffs have and recover such sums as would reasonably and justly compensate Plaintiffs in accordance with the rules of law and procedure, as to economic damages, actual damages, consequential damages, statutory penalty interest, treble damages under the Texas Deceptive Trade Practices Act and Texas Insurance Code, and all punitive and exemplary damages as may be found.  In addition, Plaintiffs request the award of attorney's fees for the trial and any appeal of this case, for all costs of court, for prejudgment and post-judgment interest, at the highest rate allowed by law, and for any other and further relief, at law or in equity, to which Plaintiffs may show themselves to be justly entitled.

Respectfully submitted,

**THE CORONA LAW FIRM, PLLC**

By: /s/ Jesse S. Corona

Jesse S. Corona
Texas Bar No. 24082184
Southern District Bar No. 2239270
12807 Haynes Road, Bldg E
Houston, Texas 77066
Office:  (281) 882-3531
Facsimile:  (713) 678-0613
Jesse@theCoronaLawfirm.com

**ATTORNEY FOR PLAINTIFFS**

10/3/2019 10:47 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 37348839
By: JONATHAN PATTON
Filed: 10/3/2019 10:47 AM

## CAUSE NO. 2019-62504

| | | |
|---|---|---|
| **CHRISTOPHER MILLER AND**<br>**CARRIE MILLER,** | §<br>§<br>§ | **IN THE DISTRICT COURT** |
| **Plaintiffs,** | §<br>§ | |
| **v.** | §<br>§ | **OF HARRIS COUNTY, TEXAS** |
| **METROPOLITAN LLOYDS INSURANCE**<br>**COMPANY OF TEXAS,** | §<br>§<br>§<br>§ | |
| **Defendant.** | § | **129th DISTRICT COURT** |

## DEFENDANT METROPOLITAN LLOYDS INSURANCE COMPANY OF TEXAS' ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Metropolitan Lloyds Insurance Company of Texas, ("Defendant"), and files this Original Answer, and in support thereof would respectfully show this Honorable Court the following:

### I. GENERAL DENIAL

Pursuant to Rule 92 of the Texas Rules of Civil Procedure, Defendant generally denies each and every, all and singular, the allegations contained within Plaintiffs' Original Petition, and demands strict proof thereon by a preponderance of the credible evidence in accordance with the Constitution and laws of the State of Texas.

### II. AFFIRMATIVE DEFENSES

Pleading in the affirmative, pursuant to Rule 94 of the Texas Rules of Civil Procedure, Defendant alleges the following affirmative defenses:

Defendant asserts that any claims for punitive/exemplary damages are governed and limited by Chapter 41 of the Texas Civil Practice & Remedies Code, including but not limited to, §§ 41.003, 41.004, 41.006, 41.007 and 41.008.

Defendant further asserts that punitive/exemplary damages cannot be sustained because an award of punitive/exemplary damages under Texas law, subject to no predetermined limit such as a maximum multiple of compensatory damages or a maximum amount on the amount of punitive/exemplary damages that may be imposed, would violate Defendant's due process rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, would violate Defendant's rights not to be subjected to an excessive fine in violation of the Eighth Amendment to the United States Constitution, and would be improper under the common law and public policies of the State of Texas, §§ 3 and 19 of the Texas Constitution. In addition, Defendant asserts that any claims of the Plaintiffs for punitive/exemplary damages against Defendant should be proved beyond a reasonable doubt under the Sixth Amendment to the United States Constitution, as opposed to a mere preponderance of the evidence.

Defendant asserts that punitive/exemplary damages are barred by the due process and excessive fines provisions contained within the United States Constitution and Article I, §§ 3 and 19 of the Texas Constitution.

Defendant also asserts that claims for punitive/exemplary damages against Defendant cannot be sustained because an award of punitive/exemplary damages in this case, combined with any prior, contemporaneous, or subsequent judgment against Defendant for punitive/exemplary damages arising out of Defendant's acts or omissions, would constitute impermissible multiple punishments for the same wrong in violation of Defendant's due process and equal protection rights guaranteed by the Fifth and Fourteenth Amendments to the United

States Constitution, and would constitute double jeopardy in violation of the common law and statutory law of the State of Texas, and Article I, §§ 3 and 19 of the Texas Constitution.

Pleading further, Defendant specifically pleads that Plaintiffs are not entitled to recovery of exemplary damages absent a showing of fraud or malice or a willful act or omission of gross neglect on the part of Defendant, pursuant to Tex. Civ. Prac. & Rem. Code Ch. 41.

Defendant further alleges all of the terms and provisions of the policy of insurance issued to the Plaintiffs by Metropolitan Lloyds Insurance Company of Texas, including but not limited to the following policy provisions:

**COVERAGE A - DWELLING**
1. **Dwelling Owners**. If **your** dwelling is a one, two, three or four family dwelling, **we** cover:
   A.   the dwelling owned by **you** on the **residence premises**; and
   B.   structures, equipment and accessories attached to the dwelling. Swimming pools not fully enclosed within the dwelling are covered under **COVERAGE B - PRIVATE STRUCTURES**.

* * *

**COVERAGE B – PRIVATE STRUCTURES**
At the location of the **residence premises:**
1.   **we** cover private structures owned by **you** and separated from the dwelling by clear space; or

* * *

Structures connected to the dwelling by only a fence, utility line, or similar connection are considered to be private structures

**We** do not cover private structures:
1.   used or held for any **business** or commercial farming purposes; or
2.   rented or held for rental to a person not a tenant of the dwelling, unless solely used as a private garage.

This coverage does not apply to land, including land on which the private structures are located, or any costs required to replace, rebuild, stabilize or otherwise restore the land.

* * *

## CAUSES OF PROPERTY LOSS

## SECTION I - LOSSES WE COVER
## (SPECIAL PERILS)

**LOSS DEDUCTIBLE CLAUSE**
**We** will pay only when a loss exceeds the deductible amount shown in the Declarations. **We** will pay only that part of the loss over such stated deductible.

**We** will pay only when a loss caused by **hurricane windstorm** exceeds the deductible amount shown in the Declarations as Hurricane Windstorm Loss deductible. **We** will pay only that part of the loss over such deductible. The deductible will apply to all Section I losses resulting from **hurricane windstorm** (including Loss of Use.)

The person(s) named in the Declarations may change this deductible only at the policy anniversary date.

**Hurricane Windstorm "% Deductible"**
If the deductible is shown as a percentage (%), the dollar amount of the deductible is determined by multiplying the deductible percentage (%) shown by the amount of insurance for Coverage A (Coverage C for Renters and Condominium Owners).

However, if a covered loss caused by fire, smoke, or explosion resulting from **hurricane windstorm** occurs, the policy loss deductible applies.

\*\*\*

## COVERAGE A – DWELLING AND COVERAGE B – PRIVATE STRUCTURES

\*\*\*

**COVERAGE C – PERSONAL PROPERTY**
**We** will pay for sudden and accidental direct physical loss or damage to the property described in Coverage C, when loss or damage is caused by **SECTION 1 – BROAD NAMED PERILS**, except as excluded in **SECTION 1 – LOSSES WE DO NOT COVER.**

## SECTION I - BROAD NAMED PERILS

Whenever Broad Named Perils is referred to in this policy, the following causes of loss will apply for sudden and accidental direct physical loss.

Under the named perils listed below, **we** do not cover loss or damage to the property which results directly or indirectly from **fungus and mold**.

---

**DEFENDANT METROPOLITAN LLOYDS INSURANCE**
**COMPANY OF TEXAS' ORIGINAL ANSWER - PAGE 4**

However, **we** do cover ensuing **fungus and mold** caused by or resulting from sudden and accidental:

a.     discharge,
b.     leakage, or
c.     overflow

of water or steam if the sudden and accidental discharge, leakage or overflow of water or steam loss would otherwise be covered under this policy.

**We** do not cover any remediation treatment or remediation testing, whether or not associated with the repair or replacement of covered property.

Remediation treatment means the reasonable and necessary treatment, removal or disposal of **fungus and mold**.

Remediation testing includes any testing or investigation of either property or air to:

a.     detect,
b.     measure,
c.     evaluate, or
d.     confirm

the absence, presence or level of **fungus and mold** whether performed prior to, during or after remediation treatment.

\* \* \*

2.     **Windstorm or Hail**
       **We** do not pay for loss to the interior of a building or to personal property inside, caused by rain, snow, sleet, sand or dust unless the wind or hail first damages the roof or walls and the wind forces rain, snow, sleet, sand or dust through the opening.

\* \* \*

## SECTION I - LOSSES WE DO NOT COVER

1.     **We** do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

\* \* \*

D.     **Water damage**, meaning any loss caused by, resulting from, contributed to or aggravated by:

       1.     flood, surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind;

2.      water or water-borne material which backs up through sewers or drains, or which overflows or is discharged from a sump pump, sump pump well or other system designed to remove subsurface water which is drained from the foundation area; or

3.      water or water-borne material below the surface of the ground, including water which exerts pressure on, or flows, seeps or leaks through any part of a building, sidewalk, foundation, driveway, swimming pool or other structure of water which causes earth movement

This exclusion applies whether or not the water damage is caused by or results from human or animal forces or any act of nature.

However, **we** pay for direct loss that ensues after water damage if caused by fire, theft or explosion and then **we** pay for only the ensuing loss.

Water damage to property described in Coverage C away from a premises or location owned, rented, occupied or controlled by **you** is excluded even if weather conditions contribute in any way to produce the loss.

E.      **Earth Movement**, meaning any loss caused by, resulting from, contributed to or aggravated by events that include, but are not limited to:

1.      earthquake and earthquake aftershocks;
2.      volcanic eruption and volcanic effusion;
3.      sinkhole;
4.      subsidence;
5.      mudslide including landslide, mudflow, debris flow, avalanche or sediment;
6.      erosion or excavation collapse;
7.      except as specifically provided by this endorsement, the sinking, rising, shifting, expanding, bulging, cracking, settling or contracting of the earth, soil or land; and
8.      volcanic explosion and lava flow, except as granted under **SECTION I – ADDITIONAL COVERAGES** for **Volcanic Action.**

This exclusion applies whether or not the earth movement is combined with water or caused by or results from human or animal forces or any act of nature.

However, **we** pay for direct loss that ensues after earth movement if caused by fire, explosion other than explosion of a volcano, theft, or breakage of glass or safety glazing material and then **we** pay for only the ensuing loss.

* * *

H.    **Neglect** by **you** to use all reasonable means to save and preserve property at and after the time of a loss.

* * *

2.    **We** do not insure under any coverage for any loss consisting of one or more of the items below. However, **we** pay for any ensuing loss unless the ensuing loss is itself excluded by any other provision in this policy. Further, **we** do not insure for loss described in Exclusion 1. above and Exclusions 3. below regardless of whether one or more of the items below (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss. The items are:

A.    conduct, act, failure to act, or decision of any person, group, organization or governmental body whether intentional, wrongful, negligent or without fault;

B.    defective, inadequate, faulty or unsound:
1.    planning, zoning, development, surveying, siting;
2.    design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
3.    materials used in repair, construction, renovation or remodeling; or
4.    maintenance;
of any property whether on or off the **residence premises**. Property includes land, structures or improvements of any kind; and

C.    weather conditions.

However, this exclusion only applies if weather conditions contribute in any way with an excluded event or cause of loss to produce the loss.

3.    **We** do not cover loss or damage to the property described in <u>Coverage A.</u> and <u>Coverage B</u> which results directly or indirectly from any of the following:

A.    wear and tear, marring, scratching, aging, deterioration, corrosion, rust, mechanical breakdown,  latent defect, inherent vice, or any quality in property that causes it to damage  or destroy itself;

B.    **fungus and mold**.
However, **we** do cover ensuing **fungus and mold** caused by or resulting from sudden and accidental:
a.    discharge,
b.    leakage, or
c.    overflow

of water or stream if the sudden and accidental discharge, leakage or overflow of water or steam loss would otherwise be covered under this policy.

**We** do not cover any remediation treatment or remediation testing, whether or not associated with the repair or replacement of covered property.

Remediation treatment means the reasonable and necessary treatment, removal or disposal of **fungus and mold**.

Remediation testing includes any testing or investigation of either property or air to:
a.      detect,
b.      measure,
c.      evaluate, or
d.      confirm
the absence, presence or level of **fungus and mold** whether performed prior to, during or after remediation treatment.

C.      settling, cracking, shrinking, bulging, or expansion of bulkheads, pavements, patios, foundations, footings, supports, walls, floors, roofs, or ceilings;

* * *

**We** pay for any direct loss that follows items A. through I. to property described in Coverages A and B not otherwise excluded or excepted in this policy and then **we** pay for only the ensuing loss. If a covered water loss follows, **we** will pay the cost of tearing out and replacing any part of the building necessary to repair the plumbing or appliance, but **we** do not cover loss to the plumbing or appliance from which the water escaped.

* * *

Pleading further, Defendant would also assert that Plaintiffs failed to comply with the terms and conditions of the insurance policy issued by Metropolitan Lloyds Insurance Company of Texas to the Plaintiffs. Specifically, the subject insurance policy provides as follows:

PROPERTY CONDITIONS

SECTION I – CONDITIONS

* * *

2.    **What you Must do After a Loss. We** have no obligations to provide coverage under this policy if **you** or **your** representative fail to comply with the following duties and the failure to comply is prejudicial to **us**:

A.    Promptly notify **us** or **our** representative.
       In case of theft, promptly notify the police.
       In case of loss under the credit card or electronic fund transfer card coverage, promptly notify the issuing company or bank.

B.    Protect the property from further damage, make reasonable and necessary repairs required to protect the property and keep a record of necessary expenditures.

C.    Cooperate with us in the investigation of a claim.

\* \* \*

E.    At any reasonable time and place **we** designate, and as often as **we** reasonably require:
       1.    show **us** the damaged property;
       2.    submit to questions concerning the loss under oath while not in the presence of any other person defined as **"you"**, and sign and swear to the answers; and

\* \* \*

F.    Within 90 days after **our** request, the named insured must file with **us** a signed and sworn proof of loss, stating to the best of **your** knowledge:
       1.    the time and cause of loss;
       2.    **your** interest and that of any other person in the property involved and all encumbrances on the property;
       3.    a description of each item, including all information contained in the inventory described above;
       4.    a description of other insurance policies that might apply to the loss;
       5.    any changes in ownership, use, possession or location of the property that took place since this policy was issued;
       6.    if loss is to a building, who occupied it at the time of loss, what the purposes of such occupancy were, and whether the building stood on leased ground;
       7.    specifications of any damaged building, fixture or machinery and detailed estimates for repair of the damage;
       8.    receipts for additional living expenses **you** incur and records supporting the fair rental value; and
       9.    evidence or affidavit supporting a claim under **SECTION 1 – ADDITIONAL COVERAGES** for **Credit Card, Electronic**

**Fund Transfer Card, Forger and Counterfeit Money,** stating the amount and cause of loss.

* * *

7.    **Appraisal.** If **you** and **we** fail to agree on the amount of loss, either **you** or **we** can make a written demand for an appraisal of the loss. Each party will select a competent appraiser and notify the other within 20 days of the appraiser's identity. The two appraisers will select a competent and impartial umpire. If the two appraisers are unable to select an umpire within 15 days, **you** or **we** can request that the choice of an umpire be made by a judge of a court of record in the state where the **residence premises** is located.

The appraisers will separately set the amount of loss determining the full replacement cost and **actual cash value** for each item as needed. If the appraisers submit a written report of an agreement to **us**, the amount agreed upon will be the amount of the loss. If they fail to agree, they will submit their differences to the umpire. The written award by two of these three people for any item will set the amount of loss and is binding on **you** and **us** when filed with **us.**

**You** will pay the appraiser selected by **you**. **We** will pay the appraiser selected by **us**. **You** and **we** will split the other expenses of appraisal and the fee of the umpire.

With regard to Appraisal, the term **"you"** applies only to the named insured, including spouse if a resident of the same household.

***

Pleading further, Plaintiffs failed to promptly repair the subject property and based upon information and belief, have not performed necessary repairs to the property.

Defendant asserts as an affirmative defense that it is incumbent on Plaintiffs to segregate their covered damages, if any, due to any windstorm or hail that allegedly occurred on or about May 26, 2018, from any other pre-existing and/or wind/hail related damages.

As an additional affirmative defense, Defendant asserts that Plaintiffs' damages at issue in this lawsuit, if any, are due to intervening, superseding causes wholly unrelated to Defendant and over which Defendant has and exercised no control.

Defendant affirmatively pleads that the damages sought by this lawsuit against it were, in whole or in part, caused by the neglect and/or intent and/or omissions of Plaintiffs and/or third person(s) over whom Defendant did not control, had no right of control, and/or no duty over which to exercise control. Plaintiffs' and/or these third person(s)' acts and/or omissions were the sole proximate cause, sole producing cause, proximate cause, or a cause of the injuries and damages alleged by Plaintiffs and cannot be attributed to Defendant.

For further affirmative defense, Defendant asserts comparative fault.

For further affirmative defense, Defendant asserts contributory negligence and proportionate responsibility as a bar to Plaintiffs' claims.

By way of additional affirmative defense, Defendant asserts that Plaintiffs' damages, if any, were caused by a new and independent cause or causes not reasonably foreseeable by Defendant. This new and independent cause(s) was the immediate and efficient cause of injury, if any, to Plaintiffs. The acts or omissions alleged by Plaintiffs against Defendant were remote and were not the proximate or producing cause of any of any of Plaintiffs' alleged damages.

Defendant affirmatively pleads the fortuity doctrine as a bar to recovery. Plaintiffs cannot recover against Defendant for any pre-existing damages and/or damages that were already losses-in-progress.

By way of additional affirmative defense, Defendant asserts that Plaintiffs are barred from recovery under the doctrine of concurrent causation.

As an additional defense, Defendant asserts the doctrine of excessive demand. In addition and without waiving the foregoing, Plaintiffs' right, if any, to an award of attorney's fees is governed by application of TEX. INS. CODE § 542A.007.

### III. JURY DEMAND

Defendant demands trial by jury.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that the Plaintiffs take nothing against Defendant, and that Defendant go henceforth without day, with its costs, and for such other and further relief, both at law and in equity, specific and general, to which Defendant may show itself to be justly entitled.

Respectfully submitted,

STACY | CONDER | ALLEN LLP

By: _____
  T. Glenn Ingram
  State Bar No. 24007423
  Dennis D. Conder
  State Bar No. 04656400

901 Main Street, Suite 6200
Dallas, Texas 75202
(214) 748-5000
(214) 748-1421 FAX
憧                                              HYPERLINK
"mailto:conder@stacyconder.com"
ATTORNEYS FOR DEFENDANT
METROPOLITAN LLOYDS INSURANCE
COMPANY OF TEXAS

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 3rd day of October, 2019, a copy of the foregoing was delivered to counsel for Plaintiffs pursuant to the Texas Rules of Civil Procedure.

_____
T. Glenn Ingram

PAN/PLDG/632071.1/001466.19192

DEFENDANT METROPOLITAN LLOYDS INSURANCE
COMPANY OF TEXAS' ORIGINAL ANSWER - PAGE 12